PATRICIA RIVET MURRAY, Judge.
 

 _JjIn this criminal case, the defendant, Kelly Regis, seeks review of his conviction and sentence for attempted possession of cocaine with intent to distribute. On appeal, Mr. Regis raises two issues: (1) whether the trial court erred in denying his motion to disclose the confidential informant’s identity; and (2) whether the jury instruction under La.C.Cr.P. art. 782, which in a non-capital case allows a non-unanimous jury (ten of twelve) to convict, resulted in an unconstitutional jury verdict. We find the trial court did not abuse its discretion in denying Mr. Regis’ motion to compel disclosure of the informant’s identity. We further find the jury instruction under Article 782 did not result in an unconstitutional jury verdict. Nonetheless, the record contains one patent sentencing error. We thus affirm Mr. Regis’ conviction, amend his sentence, and affirm the amended sentence.
 

 STATEMENT OF THE CASE
 

 In October 2007, Mr. Regis was charged by bill of information with possession of cocaine with intent to distribute, a violation of La. LR.S. 40:967(A)(1). In November 2007, he was arraigned and entered a plea of not guilty. In March 2008, the district court denied Mr. Regis’ motion to suppress evidence and found probable cause to hold him for trial. Also in March 2008, Mr. Regis filed a motion to compel disclosure of a confidential informant’s identity. The district court denied the motion. In April 2008, the district court granted Mr. Regis’ motion to sever his case from that of his co-defendant, Shatoney Hales. In April
 
 *185
 
 2009, a twelve-person jury found Mr. Re-gis guilty of the lesser included offense of attempted possession of cocaine -with intent to distribute. The district court sentenced him to eight years at hard labor, but without benefit of parole, probation, or suspension of sentence for the first two years. This appeal followed.
 

 STATEMENT OF THE FACTS
 

 In August 2007, Detective Christian Varnado, Lieutenant Mark Mornay, and other New Orleans Police Department (“NOPD”) officers participated in the execution of a search warrant for an apartment located at 1561 Iberville Street. The warrant was obtained based on numerous citizen complaints and information received from a confidential informant regarding narcotics trafficking occurring at that apartment. According to the affidavit to secure the warrant, the informant made two controlled drug buys from Mr. Regis while under continuous surveillance of the investigating officers. The informant was familiar with Mr. Regis and Ms. Hales because he had made drug purchases from them in the past. The informant had been used thirty times in the past to investigate drug activity.
 

 | sWhen the officers arrived to execute the warrant, the targets of the investigation — Mr. Regis and Ms. Hales — were standing on the front porch. During the search, the takedown team detained Mr. Regis and Ms. Hales outside of the apartment. As a result of the items found in the search, Mr. Regis and Ms. Hales were arrested.
 

 Detective Varnado, who was a member of the N.O.P.D. Major Case Narcotics Unit and a part of the entry team, testified that he systematically searched the apartment, which had three upstairs bedrooms. In the third upstairs bedroom, he found an unidentified woman and her infant; the woman explained that she was temporarily residing in the apartment with her infant. In the first upstairs bedroom, Detective Varnado found clothing and shoes matching the physical characteristics of individuals Mr. Regis’ and Ms. Hales’ sizes. On this basis, he identified that room as Mr. Regis’ and Ms. Hales’ shared bedroom. In that room, he found on top of a dresser a medicine bottle containing 114 Xanax pills; two Louisiana identification cards, one belonging to Ms. Hales and the other belonging to Mr. Regis; an envelope with Mr. Regis’s name on it; and Mr. Regis’ photograph. The identification card and the envelope belonging to Mr. Regis reflected a different address than the searched premises. No utility bills in Mr. Regis’ name were found in the apartment.
 

 Inside an otherwise empty kitchen cabinet, Detective Varnado found a box of Good Sense sandwich bags. Inside the box were not only plastic baggies, but also a B.30 gram rock of cocaine wrapped in plastic. According to Detective 14Varnado, the rock “was larger than what is typically found on a street level user.” Next to the box, he found a piece of plastic the same size as the piece of plastic that was wrapped around the rock of cocaine. In the cabinet he also found six .357 magnum bullets.
 

 Detective Varnado testified that based on his personal experience he believed the cocaine found in the apartment was not intended for personal use, but rather was intended for distribution. He provided three reasons for his belief. First, a $10 rock, which is the lowest form usually bought by users, is “point one” gram; thus, the 3.30 rock of cocaine found in the box could be broken down and possibly cut into thirty-three pieces. Second, plastic sandwich bags, such as those found in the cabinet, are typically used to house crack cocaine in different states: larger states and smaller states to be distributed. (The
 
 *186
 
 plastic bags are tied off tight at the end and cut.) Third, the piece of plastic that was found next to the box was the same size and shape as the plastic that housed the 3.30 gram rock of cocaine found in the box.
 

 None of the evidence seized was submitted for fingerprint identification. Detective Varnado explained that no fingerprint tests were conducted on the sandwich bag box or plastic baggies because, in his experience, fingerprint tests on these surfaces are never successful.
 

 Shortly after the warrant was executed, Lieutenant Mornay, the supervisor of both the takedown and entry teams, arrived on the scene. Detective Varnado informed him that cocaine had been located in a kitchen cabinet and that a woman |sand her infant had been located in an upstairs bedroom.
 
 [1]
 
 As a result of the outcome of the search, Lieutenant Mornay ordered the arrest of Mr. Regis and Ms. Hales for possession of cocaine with intent to distribute. Before Mr. Regis and Ms. Hales were arrested, Lieutenant Mornay informed them of their
 
 Miranda
 
 rights. The officers found in Mr. Regis’ front pants pocket a set of keys to the searched apartment and currency in the amount of $115.00. The currency was in small denominations: four $20 bills, one $10 bill, and five $5 bills. No drugs were found on either Mr. Regis or Ms. Hales. A black cell phone was seized from one of them. The apartment was leased to Ms. Hales. No weapons, razor blades, or baking soda were found in the apartment.
 

 According to Lieutenant Mornay, Mr. Regis was asked if he would cooperate; and Mr. Regis initially indicated that he would. Mr. Regis admitted that he had been living in the searched apartment for six months. As noted, the keys to the apartment were found in his pocket. Mr. Regis told Lieutenant Mornay that he did not know anything about the cocaine or who owned it. Mr. Regis stated that they rented the apartment and thus anyone could have put the cocaine in the cabinet.
 

 The parties stipulated to the criminalist’s expertise and that the criminalist would testify that the white rock seized from the searched apartment tested positive for cocaine.
 

 \ «DISCUSSION
 

 Errors Patent
 

 A review of the record for errors patent reveals an error in Mr. Regis’ sentence. The district court sentenced him to a term of imprisonment at hard labor for eight years without benefit of parole, probation, or suspension of sentence for the first two years. La. R.S. 40:967(A)(l)(B)(4)(b) provides that a person convicted of possession of cocaine with intent to distribute shall be sentenced to serve a term of imprisonment at hard labor of not less than two years nor more than thirty years, with the first two years of said sentence being without benefit of parole, probation, or suspension of sentence; and may, in addition, be sentenced to pay a fine of not less than $50,000.00.
 
 [2]
 
 Mr. Regis was convicted of the lesser included offense of attempted possession of cocaine with intent to distribute pursuant to La. R.S. 40:979(A), which provides:
 

 [A]ny person who attempts or conspires to commit any offense denounced and/or made unlawful by the provisions of this Part shall, upon conviction, be fined or imprisoned in the same manner as for
 
 *187
 
 the offense planned or attempted, but such fine or imprisonment shall not exceed one-half of the longest term of imprisonment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.
 

 “There is no express statutory minimum sentence for being convicted of an attempt, and principles of lenity require that the statute be strictly construed.”
 
 State v. Callahan,
 
 95-1331, p. 1 (La.3/29/96), 671 So.2d 903;
 
 see also State v. Brown,
 
 00-2120 (La.App. 4 Cir. 12/19/01), 804 So.2d 863. Accordingly, Mr. Regis’ sentence must be amended to delete the prohibition denying him benefit of parole, probation, or suspension of sentence for the first two years.
 

 17Disclosure of Confidential Informant’s Identity
 

 By his first assignment of error, Mr. Regis contends that the district court’s denial of his motion to disclose the confidential informant’s identity violated his Sixth Amendment right to confrontation at the motion to suppress hearing and at trial.
 

 As a general rule, the state has a privilege to withhold the identity of a confidential informant absent exceptional circumstances.
 
 State v. Broadway,
 
 96-2659, p. 19 (La.10/19/99), 753 So.2d 801, 815. The privilege, however, is not an absolute one. The courts employ a balancing test to determine when the confidential informant’s identity must be disclosed to the defense.
 
 Id.
 
 (citing
 
 Roviaro v. United States,
 
 353 U.S. 53, 62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)). “Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstance of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer’s testimony, and other relevant factors.”
 
 Roviaro, supra.
 
 Pursuant to this test, the public interest in protecting the flow of information must be balanced against the individual’s right to prepare his or her defense.
 
 Broadway,
 
 96-2659 at p. 19, 753 So.2d at 815. The informant’s identity must be revealed when the accused establishes that disclosure is essential to his or her defense.
 
 Id.
 
 The accused, however, has the burden of “setting forth concrete reasons why identity of the informant is crucial to the defense.”
 
 Broadway,
 
 96-2659 at pp. 19-20, 753 So.2d at 815. The district court has great discretion in deciding whether disclosure is warranted.
 
 Id.
 

 The informant privilege is codified in La. C.E. art. 514. This article enumerates several exceptions to the general rule of privilege including when “[t]he party seeking to overcome the privilege clearly demonstrates that the interest |sof the government in preventing disclosure is substantially outweighed by exceptional circumstances such that the informer’s testimony is essential to the preparation of the defense or to a fair determination on the issue of guilt or innocence.” La. C.E. art. 514 C(3).
 
 [3]
 
 When the state’s case shows the informer participated in the crime, the jurisprudence has implied that this factor is sufficient to establish “exceptional circumstances,” and the informer’s identity should be disclosed. In such cases, the informer does more than furnish a tip that enables the police to make an arrest. While working with the police, he takes part in the illegal transaction itself.
 
 See State v. Dotson,
 
 260 La. 471, 505-506, 256 So.2d 594, 606 (La.1971);
 
 *188
 

 State v. Wolfe,
 
 630 So.2d 872, 876-877 (La. App. 4th Cir.1993).
 

 In this case, the district court denied Mr. Regis’ motion to compel disclosure of the informant’s identity. In its reasons for judgment, the district court relied on
 
 State v. Degruy,
 
 96-1463 (La. App. 4th Cir.5/14/97), 696 So.2d 580, which held that the key to deciding this issue is the informant’s participation in the alleged criminal activity. If the informant did not participate in the crime with which the defendant stands charged, then the defense cannot compel disclosure.
 
 Id.
 
 Applying these principles, the district court reasoned that the state was not required to disclose the informant’s identity because the informant did not participate in the crime with which Mr. Regis was charged. The district court stated:
 

 [T]he confidential informant’s involvement ends before the search warrant was executed. The informant has no involvement with the silver dollar sized rock of crack cocaine found within the home occupied by both defendants at the time the search warrant was executed. Apparently, the State’s case depends on the circumstances concerning the size of the rock found in a box in the pantry with baggies and no other food typically found in the pantry, as well as the cash and other evidence seized.
 

 |flMr. Regis contends that the district court erred in finding that he was charged with distribution of a specific piece of cocaine — the rock of cocaine found in the apartment. In support, he points out that at trial the state offered the currency found on him — $115 in small denomination — as evidence of his intent to sell cocaine. Although the informant was not mentioned by either of the state’s two witnesses at trial (Detective Varnado and Lieutenant Mornay), Mr. Regis contends that the state’s witness, Lieutenant Mor-nay, implicitly referred to the sales to the informant by testifying that the currency found on Mr. Regis was “the proceeds from narcotic sales.” This argument, however, is not supported by the record. Lieutenant Mornay’s testimony regarding the currency was in response to a question regarding why the .police generally seize currency. Lieutenant Mornay’s testimony was that “[t]he money is proceeds from narcotics sales, small amounts of crack cocaine, is what we believed based on experience.” Lieutenant Mornay was not referring to any particular past sales by Mr. Regis; rather, he was explaining that the finding of currency in small denominations is an indicator of drug trafficking.
 

 The record reflects that Mr. Regis was arrested and charged with possession of cocaine with intent to distribute based on the rock of cocaine and other evidence indicating narcotic trafficking — plastic baggies, piece of plastic, and currency in small denominations — found in executing the warrant for the apartment at which Mr. Regis resided.
 
 [4]
 
 The informant in this case, albeit pivotal to obtaining a search |10warrant for the apartment, was not a participant in the crime for which Mr. Regis was charged. Under these circumstances, the defense is not entitled to compel disclosure.
 
 See Degruy, supra; State v. Thomas,
 
 553 So.2d 980, 982 (La.App. 4th Cir.1989)(noting that a confidential informant’s “furnishing of information to police, which is used by them to obtain a search warrant, is not in itself an exceptional circumstance requiring disclosure”);
 
 State v.
 
 
 *189
 

 Badie,
 
 510 So.2d 120 (La.App. 4th Cir. 1987).
 

 Mr. Regis also contends that the informant’s identity was necessary to his defense because the informant’s testimony might have contradicted that of the officers. Merely alleging that contradictory testimony may be possible does not constitute “exceptional circumstances” or a “concrete reason” to disclose the identity of the confidential informant. No basis exists in this case to conclude that Mr. Regis’ rights were prejudiced by non-disclosure of the confidential informant’s identity. We thus find the trial court did not abuse its discretion in denying the motion to compel disclosure of the informant’s identity.
 

 Non-unanimous jury verdict
 

 Mr. Regis’ second assignment of error is that the jury instruction informing the jury that it did not have to reach a unanimous verdict to convict him was unconstitutional. We find this assignment of error unpersuasive for three reasons. First, a review of the record reflects that no contemporary objection was made to this jury instruction; thus, Mr. Regis arguably waived review of this claim on appeal. La. C. Cr. P. art. 841. Second, there is no indication in the record that the Injury's verdict in this case was less than unanimous. Third, the appellate courts that have addressed this issue, including this court, have rejected it.
 
 State v. Tillman,
 
 08-0408, p. 25 (La.App. 4 Cir. 3/04/09), 7 So.3d 65, 78;
 
 State v. Smith,
 
 09-100 (La.App. 5 Cir. 8/25/09), 20 So.3d 501 (collecting cases from all the circuits).
 

 DECREE
 

 The defendant’s conviction is affirmed. The defendant’s sentence is amended to delete that portion which denies the benefits of probation, parole, and suspension of sentence for the first two years; and, as amended, the defendant’s sentence is affirmed.
 

 CONVICTION AFFIRMED; SENTENCE AMENDED, AND AFFIRMED AS AMENDED.
 

 [1]
 

 . Although Lieutenant Mornay acknowledged that the woman had full access to the apartment kitchen, the woman was cleared of any involvement in the drug sales and released.
 

 [2]
 

 . Cocaine is a schedule II drug. Schedule 11(A)(4) of La. R.S. 40:964.
 

 [3]
 

 . None of the other exceptions enumerated in La. C.E. art. 514 is relevant to the circumstances presented in this case.
 

 [4]
 

 . Although the officers found an identification card and mail in Mr. Regis' name with a different address, Mr. Regis admitted to the officers that he had resided in the apartment for six months.