MARION F. EDWARDS, Judge.
Defendant/appeIIant, Kevin Howard (“Howard”), appeals the verdict of the district court finding him guilty of possession with intent to distribute heroin, a violation of LSA-R.S. 40:966(A), and possession of 28 grams or more, but less than 200 grams of cocaine, a violation of LSA-R.S. 40:967(F). For the following reasons, we conditionally affirm his conviction and remand the matter to the trial court.
After the verdict, the trial court sentenced Howard to fifteen years at hard labor on each count, to be served concurrently with each other, and with any other sentences he was currently serving. The court also imposed a fine of $50,000 as to Count 2.

TRIAL TESTIMONY AND EVIDENCE

Detective Jason Monnerjahn of the Jefferson Parish Sheriffs Office instituted a narcotics investigation at 238 Helen Street, Apartment C that involved Howard. Detective Monnerjahn applied for and was issued a search warrant for the residence on August 2, 2007. He testified that his warrant application was based on a controlled undercover transaction wherein a first-time confidential informant purchased narcotics from a man at the Helen Street residence. Officer Monnerjahn testified that, at the time of the transaction, Officer Derek Magee surveilled the residence and Officer Elvin Módica kept an eye on the informant. Officer Monnerjahn showed a photograph of Howard to the informant, and the informant identified Howard as the man from whom he had bought the narcotics.
Detective Monnerjahn testified that, on August 3, 2007, he and several other officers went to 233 Helen Street, Apartment C, to execute the search warrant. Detective Monnerjahn knocked on the front door and announced a police presence. When he received no response, he entered the apartment through the unlocked door. Wondra Howard, Derrick Howard, and Edward Veal were discovered on the second floor. The officers detained them and brought them to the first floor. Mr. Veal resisted, and the officers “OC sprayed” him to subdue him. Detective Monner-jahn spoke with Ms. Howard, who told him Howard was her brother and that he lived at her apartment at times, staying in the back bedroom on the second floor. Detective Monnerjahn asked Edward Veal and Derrick Howard whether they knew of any illegal narcotics on the premises, and they said they did not. Detective Monnerjahn testified that Detective Sean Cursain of the K-9 Division was summoned to the scene with his drug detecting dog, Rex.
Detective Cursain, an expert in K-9 training and handling, testified that he led Rex through the Helen Street apartment. The dog showed a response to narcotics odor in three areas of the residence: (1) the clothes closet and (2) a chest of drawers in Howard’s upstairs bedroom, and (3) a briefcase in a common living area of the apartment. Detective Monnerjahn testi *1102 fied that, in the upper part of the bedroom closet, he located a Cole-Haan brand shoe box containing $254 in currency, a scale, a bag of rice, powder cocaine, crack cocaine, and heroin. Men’s clothing belonging to Howard was found in the chest of drawers.
Detective Cursain testified that he searched the briefcase and found an En-tergy bill in the name of Wondra Howard; a Southern University student identification card in Kevin Howard’s name; and a business card, bearing a Jefferson Parish seal and Howard’s name, along with the title “adult drug court social service counselor.” Detective Cursain stated there were no narcotics in the briefcase. Detective Monnerjahn testified that Howard was not at the apartment when the search was conducted. Detective Mó-dica telephoned Howard after obtaining his contact information from Ms. Howard, and Howard arrived at the residence a short time later. According to Detective Monnerjahn, Howard had a key to the Helen Street apartment.
Detective Monnerjahn advised Howard of his Miranda rights. It was stipulated at trial that he understood his rights, and he knowingly waived them. Detective Monnerjahn testified that he and Agent Cursain conducted a tape recorded interview with Howard in the upstairs bedroom. The recording was transcribed, and the transcript was admitted into evidence at trial.
The officers asked Howard where he lived, and he responded that he lived at 233 Helen Street with his sister and her two sons, ages seven and thirteen. He said he kept his drugs in the apartment in a Cole-Haan shoebox in the rear upstairs bedroom, stating there were two ounces of powder cocaine, twelve grams of crack cocaine, and one-half gram of heroin in the box. Howard told the officers he sells drugs for money, and Ms. Howard and the others in the apartment that day did not know about the narcotics. He said some of his customers contacted him on his cellular telephone, while he sold to others on the street.
The parties stipulated at trial that, if Charles Krone were called as a witness, he would be accepted as an expert in the identification and analysis of narcotics, and he would testify consistently with his laboratory report, State’s Exhibit 1. The parties specifically stipulated that the cocaine seized in this case weighed between twenty and two hundred grams. The laboratory report shows that specimen number three (State’s Exhibit 2), measuring a net weight of 59.64 grams, tested positive for cocaine; specimen number four (State’s Exhibit 3), with a gross weight of .99 grams, also tested positive for cocaine; and specimen number five (State’s Exhibit 4), with a net weight of approximately 10 grams, was found to contain “cocaine base.” The report further shows that specimen number 6 (State’s Exhibit 5), with a gross weight of .39 grams, tested positive for heroin.
Howard’s mother, Joyce Howard, testified for the defense at trial. She stated that she lives in Houston, Texas, but that she traveled to New Orleans for a friend’s funeral on the weekend of August 3, 2007. Howard picked her up from the Greyhound Bus Terminal in New Orleans at 8:30 that morning and brought her to her daughter’s home. He had traveled from his home in Baton Rouge to attend the funeral.
Howard testified at trial that he lived in Baton Rouge in August 2007. He was working as an intern at a drug detoxification center as part of a master’s program in public administration at Southern University. He testified that he used drugs at one time but that he has been in recovery *1103 for thirteen years. He did not sell narcotics.
Howard testified that his sister, Wondra Howard, lives at 233 Helen Street, Apartment C. He visits with her from time to time and, when he stays at her residence, he sleeps in her children’s bedroom. He does not have a designated room at his sister’s apartment. According to Howard, he left his house in Baton Rouge on August 2, 2007, and went to his sister’s apartment. He slept there that night, and the next morning he picked up his mother at the bus station. On the afternoon of August 3, 2007, he was with his mother and stepfather when he received a telephone call from a police officer- who told him to return to the Helen Street apartment.
When he arrived at the apartment, officers were there with a K-9 dog. A shoebox and drugs were sitting on a table. Officers searched him and found nothing except $14. Howard testified that the officers told him someone had to claim ownership of the narcotics. Howard said he would take responsibility for the drugs. The officers told him he would have to submit to an interview before they would release the others in the house from custody. Howard testified that he agreed to make a statement, and he said what the police officers instructed him to say.
Howard testified at trial that the drugs recovered from the shoebox did not belong to him and that he did not sell narcotics out of 233 Helen Street, Apartment C. He claimed responsibility for the narcotics to protect his sister, since she was on probation at the time, and she was under investigation by child protective services. At that time, she was using drugs. Howard stated he had no keys in his possession when he arrived at the apartment during the police investigation and did not know how the officers obtained the apartment key that was admitted into evidence. The $240 found in the shoebox belonged to his sister, but the investigating officers gave it to him. Howard explained that the clothing seized at the apartment belonged to him and that he had brought it with him from Baton Rouge so that he could change after the funeral. Howard testified that his sister’s associates, Carlos Lawrence and Edward Veal, had access to her apartment. Veal was a drug user. Lawrence, who is now deceased, was a known drug dealer in the area.
On cross-examination, Howard admitted he had a 1-996 conviction for possession with intent to distribute cocaine and convictions for possession of cocaine in 1991, 1992, and 1993.
On appeal, Howard argues he is entitled to a new trial because his trial counsel was ineffective. Specifically, he complains his counsel was deficient in entering into several stipulations regarding the evidence at trial and that those stipulations prejudiced his ability to refute the evidence against him. He further argues that counsel was deficient in failing to call Wondra Howard to testify at trial as to the reasons for Edward Veal’s presence in her home.
At the outset, we note the following error patent concerning Howard’s waiver of a jury trial.
Although the right to a jury trial may be waived in non-capital cases, it must be “knowingly and intelligently” waived. La.C.Cr.P. art. 780(A). Waiver of this right is never presumed.[1] We must indulge every reasonable presumption against waiver of this fundamental right.[2] *1104 Although it remains the preferred method for the district court to advise a defendant of the right to a jury trial in open court before obtaining a waiver, that practice is not statutorily required.[3] It is likewise preferred, but not necessary, for the defendant to waive the right to a jury trial personally. Counsel may waive the right on the defendant’s behalf, provided the defendant’s decision to do so was made knowingly and intelligently.[4]
The minute entry for June 22, 2009, states, “Defendant waived Right to a Jury trial and requested a Bench Trial.” The transcript for that day reflects the following exchange:
MR. LEMMON [defense counsel]:
Your Honor, Jake Lemmon on behalf of Kevin Howard. If we could get a quick trial date on this one, Judge?
THE COURT:
Step up.
[A DISCUSSION WAS HELD OFF THE RECORD.]
THE COURT:
Mr. Howard, Wednesday morning at 9:00 o’ clock you’re going to get a bench trial. I’m going to try the case, no jury, okay.
I know that makes you’re happy and I’m glad you’re happy, let’s hope it turns out that way.
MR. SMITH [prosecutor]:
Your Honor, so the State does not receive an unfair surprise on Wednesday morning I would like Mr. Howard to give a formal waiver of his right to a jury trial now so that I don’t suddenly get surprised and have—
THE COURT:
Well, that’s certainly a reasonable request, although you’re not aware of this, Mr. Howard has been wanting a bench trial from, as they say from the jump, okay.
Make your waiver.
MR. LEMMON:
Your Honor, at this time we would inform the Court that we would elect a trial by the Bench and we’d like to waive a trial by jury.
THE COURT:
Inasmuch as it’s the Court’s discretion to grant same I do. Bench trial commences 9:00 o’ clock Wednesday morning.
Sign a notice to be here, Mr. Howard.
On June 24, 2009, the day of trial, the following discussion took place:
MR. SMITH:
Your Honor, prior to giving an opening statement the State would like to offer a stipulation to defense counsel.
MR. LEMMON:
Judge, prior to that, I know the record was perfected yesterday in terms of Mr. Howard waiving his right to a trial by jury and exercising his the right to be tried before the Court alone.
I just wanted to state for the record and have Mr. Howard acknowledge that that’s against my advice.
|aTHE COURT:
Your client is entitled to sit next to you at counsel table, unless you have other plans.
MR. LEMMON:
I don’t Judge.
THE COURT:
*1105 Let him sit at counsel table and use the microphone in front of him.
All right, Mr. Howard, do you acknowledge that your attorney advised you to be tried before a jury and not before a judge?
MR. HOWARD:
Yes, sir.
THE COURT:
And you chose to not follow his advice and repeat your request to me for a bench trial, is that correct?
MR. HOWARD:
Yes, sir, Your Honor.
THE COURT:
Okay, does that satisfied [sic] you?
MR. LEMMON:
Yes, I am, thank you.
Although a Boykin-like colloquy is not required, the trial judge must determine if the defendant’s jury trial waiver is knowing and intelligent. The record in this case does not satisfactorily show that Howard was fully informed of his right to a jury trial by either the court or by his attorney, or that the waiver was knowingly and intelligently made.[5]
The Louisiana Supreme Court has set out a procedure by which the case is initially remanded to the trial court for an evidentiary hearing on the question of whether the defendant validly waived the right to a jury trial.[6] The Nanlal court held that, if the evidence shows the defendant did not make a valid waiver, the trial court must set aside the conviction and sentence and grant the defendant a new trial. The supreme court reserved the defendant’s right to appeal any adverse ruling of the waiver issue. This Court has followed the procedure set out in Nanlal.[7]
Based on the foregoing, the conviction is conditionally affirmed, and we instruct the trial court to conduct an evidentiary hearing on the issue of whether Howard executed a valid waiver of his right to a jury trial. If he did not, the trial judge must set aside the conviction and sentence. If he did, then the trial judge should so rule, and this Court affirms the conviction and enhanced sentence. In this last instance, we reserve Howard’s right to appeal the adverse ruling of the waiver issue.

INEFFECTIVE ASSISTANCE OF COUNSEL

Under the Sixth Amendment to the United States Constitution and Article I, § IB of the Louisiana Constitution, a defendant is entitled to effective assistance of counsel. A claim of ineffective assistance of counsel must satisfy the two-prong test set forth in Strickland v. Washington.[8]
The defendant must show that counsel’s performance was deficient and that the deficiency prejudiced the defendant. Counsel’s performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed to the defendant by the Sixth Amendment.[9] Counsel’s deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial; *1106 that is, a trial whose result is reliable.[10] To carry his burden, the defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.[11]
A court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action “‘might be considered sound trial strategy' ”[12] There is no precise definition of reasonably effective assistance of counsel, so any inquiry into the effectiveness of counsel must be specific to the facts of the case, and must take into consideration the counsel’s perspective at the time.[13] The Sixth Amendment does not guarantee er-rorless counsel or counsel judged ineffective by hindsight, but counsel reasonably likely to render effective assistance.[14]
A claim of ineffective assistance of counsel is most appropriately addressed not on direct appeal, but through an application for post-conviction relief filed in the trial court where a full evidentiary hearing can be conducted.[15] However, when the record contains sufficient evidence to rule on the claim’s merits and the issue is properly raised on appeal by assignment of error, it may be addressed in the interest of judicial economy.[16]
In the instant case, the record is sufficient for us to address some of the ineffective assistance claims, but not others. For example, after the State rested at trial, defense counsel offered a stipulation that the facts contained in the search warrant affidavit were accurate with regard to the undercover drug buy. This stipulation included information that Howard was positively identified as having sold narcotics to a confidential informant at 233 Helen Street, Apartment C. The prosecutor, in turn, offered to stipulate that, if Detective Elvin Módica were called as a witness, he would testify consistently with the information in Detective Monnerjahn’s search warrant application. Defense counsel agreed to the stipulation proffered by the State, passing on the opportunity to cross-examine Detective Módica, one of the officers who worked with the confidential informant.
Howard also argues his trial counsel was ineffective in failing to call his sister, Won-dra Howard, as a witness at trial. He suggests counsel could have questioned Ms. Howard about why he was staying at her apartment and about why Edward Veal was there and why police sprayed Veal. Howard’s defense theory was that the drugs belonged to Wondra Howard, and he claimed responsibility on her behalf. He further claimed Veal was a drug user who had a key to the apartment.
A defense counsel’s decision to call or not call a witness is a matter of trial strategy and is not per se evidence of *1107 ineffective assistance.[17] This Court has held that claims of ineffectiveness of counsel relating to trial strategy cannot be determined by review of the record on appeal but, rather, such a claim must be asserted by application for post-conviction relief, where the issue can be considered through an evidentiary hearing to determine, among other things, the defense strategy and whether the defendant himself was aware of the strategy and acquiesced in it.[18]
When there is sufficient evidence to consider some but not all of the allegations of ineffectiveness of counsel, this Court has declined to address any of the claims on grounds that the entirety of claims are more properly addressed on post-conviction relief at an evidentiary hearing.[19]
Although courts relegate unresolved issues to post-conviction relief when the record is insufficient to address them, in other cases, courts have felt that the interest of justice and judicial economy would be better served by remanding the case for an evidentiary hearing so that the issue could be resolved promptly.[20] By this opinion, we have already ordered a remand in order to determine the issue of jury waiver. Considering that determination, and in the interest of justice and judicial economy, we find that remand for a contradictory hearing on the claims of ineffective assistance of counsel will allow Howard the .opportunity to develop an adequate record on these issues at this time. Howard’s right to appeal from an adverse decision on the issue is reserved.
Finally, remand is warranted for correction of one of the two illegally lenient sentences. La. R.S. 40:966 B(l) requires that at least five years of Howard’s sentence for possession with intent to distribute heroin be served without benefit of parole, probation, or suspension of sentence. The trial court placed no restrictions on the sentence on Count 1. Since the statute requires the exercise of the trial court’s sentencing discretion in imposing restriction of benefits, we vacate the illegal sentence and remand for re-sentencing in accordance with the statute. Howard’s sentence on Count 2 is also illegally lenient. La. R.S. 40:967(G) provides that no defendant convicted under LSA-R.S. 40:967(F) is eligible for parole, probation, or suspension of sentence until he has served the minimum sentence provided under La. R.S. 40:967(F). In this case, the minimum sentence to which Howard was exposed was five years. The trial court should have, but did not, required that the first five years of his sentence on Count 2 be served without benefits. However, the provision is self-activating under La. R.S. 15:301.1, and no corrective action is needed.
Accordingly, for the reasons stated, we conditionally affirm Howard’s convictions and sentence on Count 2. This case is remanded to the district court for purposes of conducting the evidentiary hearings as provided for hereinabove.

*1108
CONVICTION AND SENTENCE CONDITIONALLY AFFIRMED; REMANDED FOR EVIDENTIARY HEARINGS.

WICKER, J., Concurring in Part and Dissenting in Part.

. State v. McCarroll, 337 So.2d 475, 480 (La.1976); State v. Zeringue, 03-697 (La.App. 5 Cir. 11/25/03), 862 So.2d 186, writ denied, 03-3523 (La.4/23/04), 870 So.2d 298.

. State v. McCarroll, supra.

. State v. Pierre, 02-2665 (La.3/28/03), 842 So.2d 321 (per curiam); State v. Lokey, 04-616 (La.App. 5 Cir. 11/30/04), 889 So.2d 1151, writ denied, 04-3195 (La.5/6/05), 901 So.2d 1093.

. Id.

. See, e.g., State v. Terrase, 02-1009 (La.App. 5 Cir. 2/25/03), 841 So.2d 947; also State v. McCloud, 04-1112 (La.App. 5 Cir. 3/29/05), 901 So.2d 498, writ denied, 05-1450 (La. 1/13/06), 920 So.2d 235.

. State v. Nanlal, 97-0786 (La.9/26/97), 701 So.2d 963.

. State v. Terrase, supra.

. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), adopted in State v. Washington, 491 So.2d 1337, 1339 (La.1986).

. Strickland, supra.

. Id.

. Id.

. State v. Dabney, 05-53 (La.App. 5 Cir. 6/28/05), 908 So.2d 60.

. State v. LaCaze, 99-0584 (La.1/25/02), 824 So.2d 1063, 1078-79, cert. denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002).

. Id.

. State v. McDonald, 04-550 (La.App. 5 Cir. 11/16/04), 889 So.2d 1039, writ denied, 04-3088 (La.4/1/05), 897 So.2d 599.

. Id.

. State v. Allen, 06-778 (La.App. 5 Cir. 4/24/07) 955 So.2d 742.

. Id.; See also, State v. Cambre, 05-888 (La.App. 5 Cir. 7/25/06), 939 So.2d 446.

. Id.

. See, State v. Wille, 559 So.2d 1321 (La.1990); State v. Waters, 00-0356 (La.3/12/01) 780 So.2d 1053; State v. Addison, 94-2745 (La.6/23/95) 657 So.2d 974; State v. Lee, 00-183 (La.App. 1 Cir. 2/16/01), 788 So.2d 452, writ denied, 00-1611 (La.3/30/01), 788 So.2d 442; State v. Lemon, 29,587, 29,588 (La.App. 2 Cir. 8/20/97), 698 So.2d 1057; State ex rel. D.A., 08-346 (La.App. 3 Cir. 8/29/08) 995 So.2d 11.