CLARENCE E. McMANUS, Judge.
1 ¿This is defendant’s second appeal.
Defendant, Kevin Howard, was convicted of possession with intent to distribute heroin, a violation of LSA-R.S. 40:966 A and possession of 28 grams or more, but less than 200 grams of cocaine, a violation of LSA-R.S. 40,:967 F. He was sentenced to 15 years at hard labor on each count, to be served concurrently with each other, and with any other sentences he was currently serving. The court also imposed a *1163 fine of $50,000 as to Count 2. State v. Howard, 09-928 (La.App. 5 Cir. 5/25/10), 37 So.3d 1099.
On appeal, this Court conditionally affirmed the defendant’s convictions[1], and his sentence on count 2. This Court further remanded the case to the trial court ■with instructions for it to conduct an evi-dentiary hearing on the issue of whether defendant executed a valid waiver of his right to a jury trial, reserving defendant’s right to appeal in the event of an adverse ruling. State v. Howard, 37 So.3d at 1105, 1107. This Court also remanded for a contradictory hearing on the claims of ineffective assistance of counsel to allow defendant the opportunity to develop an adequate record on those issues, reserving defendant’s right to appeal in the event of an adverse decision. State v. Howard, 37 So.3d at 1107.
Lastly, this Court vacated the sentence on Count 1 and remanded for resentencing so the trial court could order at least five years to be served without benefit of parole, probation, or suspension of sentence in accordance with LSA-R.S. 40:966 B(1). State v. Howard, 37 So.3d at 1107.
On remand, an evidentiary hearing was held in the trial court as ordered by this Court. After considering the evidence, the trial judge found that the jury waiver was given knowingly, intelligently, and persistently, and that defendant’s attorney, Jake Lemmon, had not been ineffective as counsel. The transcript indicates that the trial judge sentenced defendant on Count 1 to imprisonment at hard labor for fifteen years, with the first five years to be served without benefit of parole, probation, or suspension of sentence. This appeal followed.
In his first allegation of error in this second appeal defendant argues that, on remand, the trial judge erred by finding that the jury waiver was made knowingly and intelligently.
During the evidentiary hearing held on remand, defendant testified that during the course of the trial, he met with his trial attorney, Mr. Lemmon, and that Mr. Lem-mon told him that it was probably a bad idea to have a judge trial given his history. Defendant further testified that he (defendant) asked for a judge trial and that it was his idea to do so. Defendant testified that Mr. Lemmon did not discuss with him the voir dire process of selecting a jury, the qualifications of a juror, or the number of individuals on a jury panel. He asserted that Mr. Lemmon did not discuss with him the number of jurors that would be seated at his trial or 14the number of jurors it would require to obtain a verdict. Defendant also asserted that Mr. Lemmon did not discuss with him jury challenges or the consequences of a jury failing to reach a verdict. He explained that Mr. Lemmon told him it was his (defendant’s) choice as to whether he should be tried by a jury or the judge, but that it was “a bad idea just going with one man, the judge.” When asked whether he was aware that he had the right to a jury trial, defendant replied, “I just thought it was better with the judge, I just went with my own feelings.” Defendant stated that on the morning of trial, the judge said that he was going to have a bench trial as “That’s what you wanted from the get-go;” He said the judge did not explain to him that he had a constitutional right to a jury trial. Defendant did not recall the commissioner informing him of his right to a jury trial when he was arraigned, or the commis *1164 sioner telling him that he had 15 days from the date of the arraignment to make the selection. Defendant testified that he had no legal training.
On cross-examination, defendant admitted that he told Mr. Lemmon he wanted a judge trial instead of a jury trial. Defendant also admitted that he understood that it was his choice as to whether to have a judge trial or a jury trial. He understood that he could have had a jury trial if he had wanted one. Defendant told Mr. Lemmon he wanted a judge trial, even though Mr. Lemmon said it was a bad idea, and that it was his right to do that.
The trial judge then asked defendant some questions. Defendant testified that he was in the graduate program at Southern University when this incident occurred, and was nearing completion of his master’s degree in public administration. He said he was proceeding successfully in that program. Defendant asserted that he was a drug addiction counselor at the Baton Rouge Detox Center. He admitted that he had two prior convictions, and that he had asked the trial judge on a number of occasions for a bench trial.
| ¡-.Defendant also recalled that the trial judge twice refused his request for a bench trial, prior to granting the request on the day of trial, and that his request was against defense counsel’s advice.
Defendant testified that the trial judge did not tell him he had a constitutional right to a jury trial. He admitted that he knew what a jury and a judge were, and he understood that he could have a jury trial if he wanted a jury trial. Instead, defendant chose not to have a jury trial, but to have a judge trial.
Mr. Lemmon testified that he remembered this case and recalled the trial preparations he engaged in, and the discussions he had with defendant. He stated that from the very beginning, defendant wanted to waive a jury trial and be tried by the court alone. Mr. Lemmon explained that they had discussed that topic at length on multiple occasions in court and in meetings at the public defenders’ office. He thought he had to file a special motion asking the court to reconsider its position on allowing defendant to waive the jury and be tried by the court alone.
Mr. Lemmon’s position as a defense attorney was he would never elect to try a case before a judge when a defendant has a prior criminal history. Nevertheless, Mr. Lemmon testified that he prepared for both a jury and a judge trial hoping defendant would change his mind. He remembered the issue was addressed a lot in court because it was a serious point of contention in his eyes.
On cross-examination, Mr. Lemmon testified that he advised defendant he had a right to a jury trial. He believed that defendant knowingly and intelligently waived his right to a jury trial. Mr. Lem-mon stated that defendant adamantly wanted a judge trial. He pleaded with defendant and his family from the very beginning when he first met defendant not to take a bench trial. Mr. Lemmon was relieved when the trial judge initially denied defendant the ability to have a judge trial because he thought that was his first successful step in defending defendant. | i;Mr. Lemmon stated that he indicated on the day of trial in front of the judge that it was against his advice that defendant was electing to have a judge trial.
After hearing arguments of counsel, the trial judge found that defendant knowingly, intelligently, and persistently waived his right to a jury trial. The trial judge noted that defendant knew before trial that there was the element of having to announce that he lied, that his sister’s testimony would be less than truthful, (if not damaging to him,) and that defendant’s strategy was that he was to be the sole *1165 voice of reason when he testified and that the trial judge would understand. The trial judge commented that defendant’s attorney knew otherwise and counseled him against taking the witness stand in front of a judge since defendant had two prior convictions and a disclaimer of the truthfulness of the statement he gave to the police.
The trial judge further stated that the following factors led him to conclude that defendant knowingly and intelligently waived his right to a jury trial, and that Mr. Lemmon did nothing that would have impacted the trial judge’s decision to find defendant guilty beyond a reasonable doubt: defendant’s intelligent waiver of the jury trial, his desire to conduct his own trial strategy, the fact that defendant was wise as to life and to the ways of the criminal justice system by virtue of two prior convictions, his education evidenced by the fact that he was near the completion of a master’s degree, and defendant’s “curiously” having attained the level of being an addiction counselor.
Although the right to a jury trial may be waived in non-capital cases, it must be “knowingly and intelligently” waived. LSA-C.Cr.P. art. 780 A. Waiver of this right is never presumed. State v. McCarroll, 337 So.2d 475, 480 (La.1976); State v. Zeringue, 03-697 (La.App. 5 Cir. 11/25/03), 862 So.2d 186, 193, writ denied, 03-3523 (La.4/23/04), 870 So.2d 298. Although it remains the preferred method 17for the district court to advise a defendant of the right to a jury trial in open court before obtaining a waiver, that practice is not statutorily required. State v. Pierre, 02-2665 (La.3/28/03), 842 So.2d 321 (per curiam); State v. Lokey, 04-616 (La.App. 5 Cir. 11/30/04), 889 So.2d 1151, 1154, writ denied, 04-3195 (La.5/6/05), 901 So.2d 1093. It is likewise preferred, but not necessary, for the defendant to waive the right to a jury trial personally. Id. Counsel may waive the right on the defendant’s behalf, provided the defendant’s decision to do so was made knowingly and intelligently. Id.
We find that defendant was advised he had the right to a jury trial, and that he knowingly and intelligently waived that right. Defense counsel testified that he advised defendant he had the right to a jury trial, but that defendant adamantly wanted a judge trial. Defendant admitted at the hearing that he understood that it was his choice as to whether to have a judge trial or a jury trial. He also admitted that he knew what a jury and a judge were, and that he asked for a judge trial. Accordingly, the trial judge did not err in allowing defendant to waive his right to trial by jury. Compare State v. Quest, 00-205 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, 784, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866. This allegation lacks merit.
In his second allegation of error defendant argues, as he did in his first appeal, that his trial counsel was ineffective because he entered into several stipulations regarding the evidence at trial, and those stipulations prejudiced his ability to refute the evidence against him. Specifically, defendant contends that his trial counsel was ineffective because he employed a poor defense strategy; stipulated to the lab report and the weights of the drugs; stipulated that men’s clothing found in the residence belonged to defendant; and stipulated that items found in a briefcase belonged to defendant. Defendant also contends that his trial ^counsel was ineffective because he failed to call his sister, Wondra Howard, as a witness at trial.
Mr. Lemmon indicated that he made several stipulations at trial. When asked what the purpose was for those stipulations, Mr. Lemmon responded that it would have been different if there had been a jury trial. Mr. Lemmon explained *1166 that the judge had the case for a very long time and was aware of the laboratory analysis. He further explained that most of those stipulations were made in the interest of judicial economy, but that was in conjunction with his defense that defendant was not aware of the drugs, that he did not know of the drugs, and that the drugs were not his.
With respect to the application for the search warrant, Mr. Lemmon was aware that defendant had been named by the confidential informant, however his defense was that he had been living in Texas and was not around the area where the drugs were found. Therefore, regardless of the admissibility, “it would have been the purpose of my entire defense was [sic] to remove Mr. Howard from the residence,” and that the defense contended that defendant was only at the residence for a funeral that weekend, and it would have been impossible for defendant to have been selling narcotics prior to the date of his arrest.
Under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution, a defendant is entitled to effective assistance of counsel. State v. McDonald, 04-550 (La.App. 5 Cir. 11/16/04), 889 So.2d 1039, 1042, writ denied, 04-3088 (La.4/1/05), 897 So.2d 599. A claim of ineffective assistance of counsel must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Dabney, 05-53 (La.App. 5 Cir. 6/28/05), 908 So.2d 60, 63.
| aUnder the Strickland test, the defendant must show: (1) that counsel’s performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance prejudiced the defense. State v. Dabney, supra, citing, Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064. This requires showing that counsel’s errors were so serious as to deprive the defendant of a trial whose result is reliable. Id. The defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. State v. Dabney, 908 So.2d at 63, citing, Strickland v. Washington, 466 U.S. at 694, 104 S.Ct. at 2068.
A court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.” State v. Dabney, 908 So.2d at 63, quoting Strickland v. Washington, 466 U.S. at 689, 104 S.Ct. at 2065. There is no precise definition of reasonably effective assistance of counsel, so any inquiry into the effectiveness of counsel must be specific to the facts of the case, and must take into consideration the counsel’s perspective at the time. State v. LaCaze, 99-0584 (La.1/25/02), 824 So.2d 1063, 1078-79, cert. denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002). The Sixth Amendment does not guarantee errorless counsel or counsel judged ineffective by hindsight, but counsel reasonably likely to render effective assistance. Id.
As was stated previously, defendant contends that his trial counsel was ineffective for many reasons. First, defendant complains that the defense his counsel presented at trial — that defendant confessed his guilt to police to protect his hosister — was a poor one. It is well established that “hindsight is not the proper perspective for judging the competence of counsel’s trial decisions. An attorney’s level of representation is not determined *1167 by whether a particular strategy is successful.” State v. Brooks, 505 So.2d 714, 724 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987), citing Strickland v. Washington, supra. See also, State v. Johnson, 08-1156 (La.App. 5 Cir. 4/28/09), 9 So.3d 1084, 1093, writ denied, 09-1394 (La.2/26/10), 28 So.3d 268. Counsel’s theory of the case was consistent with defendant’s own trial testimony. Therefore, defendant cannot now complain that counsel’s performance was deficient simply because the strategy was unsuccessful.
Second, concerning the defense’s stipulation to Mr. Krone’s credentials and report, concerning the nature and amount of the drugs, we do not find that counsel was deficient in so stipulating. Such stipulations are often entered into by counsel in the interest of judicial economy and trial strategy. See State v. Gordon, 00-1013 (La.App. 5 Cir. 11/27/01), 803 So.2d 131, 147, writ denied, 02-0209 (La.2/14/03), 836 So.2d 134. In this instance, counsel’s stipulations served the ends of judicial economy as well as trial strategy. In agreeing to these stipulations defense counsel commented, “[T]he weight of the cocaine has no bearing on my defense in this matter.” The stipulations to Mr. Krone’s report did not adversely affect defendant’s case. Therefore, defendant did not suffer prejudice as contemplated by Strickland.
Regarding defense counsel’s stipulation that the articles of men’s clothing found in the Helen Street residence belonged to defendant, we do not find that counsel was deficient in entering into this stipulation, or that defendant was prejudiced by it. During his own trial testimony, defendant admitted the clothing found in the apartment belonged to him. He further testified that he put his clothes |1Tin a drawer in his nephew’s dresser. Defendant’s testimony was actually more specific than counsel’s stipulation.
Defendant also maintains that his trial counsel entered into a stipulation that all of the items located in the briefcase belonged to defendant. There is no such stipulation in the portion of the record cited by defendant, nor does there appear to be such a stipulation elsewhere in the record. In any case, defendant essentially admitted to ownership of the briefcase during his testimony. When defense counsel asked him, “Any drugs in your briefcase?” defendant responded, “No, sir.”
Next, defendant contends that his trial counsel was ineffective because he stipulated to incriminating facts contained in the search warrant, thereby passing on the opportunity to cross-examine Detective Módica, one of the officers who worked with the confidential informant. At the evidentiary hearing, Mr. Lemmon, defendant’s trial counsel, testified that he stipulated to the search warrant as part of his trial strategy, since his defense was that defendant was living in Texas and that he was only at the residence that weekend for a funeral, and it would have been impossible for defendant to have been selling narcotics prior to the date of his arrest. Because his defense was that defendant did not know about the drugs and that the drugs did not belong to him, the issues stipulated to were not germane. Further, when asked why he would stipulate to an identification that placed defendant at the scene engaged in criminal activity not before the court, Mr. Lemmon answered that it went to the credibility of the police officers who were alleging that defendant possessed the drugs for which he was convicted, because if the judge had believed defendant’s testimony, it would have shown the lack of credibility of the officers who prepared the search warrant. He also testified that not making the stipulations in question would not have definitely altered the outcome of the trial.
*1168 |12We find that defendant has not overcome the presumption that, under the circumstances, counsel’s stipulations might be considered trial strategy. Furthermore, defendant cannot now complain that counsel’s performance was deficient simply because the strategy was unsuccessful.
Finally, defendant argues that his trial counsel was ineffective because he failed to call his sister, Wondra Howard, as a witness at trial. Defendant suggests counsel could have questioned Ms. Howard about why defendant was staying at her apartment, and about a friend of hers was sprayed by the police.
A defense counsel’s decision to call or not call a witness is a matter of trial strategy and is not per se evidence of ineffective assistance. State v. Allen, 06-778, p. 11 (La.App. 5 Cir. 4/24/07), 955 So.2d 742, 751, writ denied, 08-2432 (La.1/30/09), 999 So.2d 754.
At the evidentiary hearing, counsel asked Mr. Lemmon why the individual who was tasered at the residence was not called as a witness, and Mr. Lemmon replied that he believed that that person was the boyfriend or husband of Mr. Howard’s sister, whose testimony would have been detrimental to Mr. Howard. Mr. Lemmon testified that he made a decision not to call that person or defendant’s sister because they would not have given testimony that would have been beneficial to defendant.
We find that the trial strategy employed by defendant’s trial counsel was reasonable under the circumstances, and that counsel was not deficient in failing to call defendant’s sister or her husband or boyfriend as witnesses at trial. Defendant has failed to show under the Strickland test that counsel’s performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms, or that the deficient performance prejudiced the defense. This allegation lacks merit.
^Defendant filed a pro se brief in which he alleges that the State withheld Brady[2] evidence by failing to provide him with the name of the confidential informant, whose information was used to obtain the search warrant.
As a general rule, an informant’s identity is privileged information. State v. Clark, 05-61, p. 12 (La.App. 5 Cir. 6/28/05), 909 So.2d 1007, 1014, 1014 n. 18, writ denied, 05-2119 (La.3/17/06), 925 So.2d 538 (citing State v. Broadway, 96-2659, p. 19 (La.10/19/99), 753 So.2d 801, 815, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000)). This privilege is founded upon public policy and seeks to further and protect the public interest and law enforcement by encouraging people to supply information to the police by protecting their anonymity. Clark, 05-61 at 12, 909 So.2d at 1014-15, 1015 n. 19 (citing Roviaro v. United States, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957)). However, exceptions to this privilege exist. See LSA-C.E. art. 514(C). The identity of an informant should be made known to the accused only when his right to prepare his defense outweighs the need for protection of the flow of information. State v. Smith, 09-259 (La.App. 5 Cir. 11/24/09), 28 So.3d 1092. The burden is on the defendant to show exceptional circumstances warranting disclosure of the name of a confidential informant. State v. Smith, supra.
Here, defendant’s theory of the case was that he was not present at the time of the buy, and that he lived in Texas and was only at the apartment for a funeral. The confidential informant’s information may have provided the evidence to support *1169 the search warrant, however it did not contribute to the crime charged, which was possession of the drugs found at the apartment. Therefore the defense was not entitled to disclosure of the identity of the confidential informant. State v. Regis, 09-0806 (La.App. 4 Cir. 11/12/09), 25 So.3d 183, writ denied 10-0003 (La.6/18/10), 38 So.3d 322; State v. Austin, 04-993 (La.App. 5 Cir. 3/1/05), 900 So.2d 867, writ denied 05-0830 (La.11/28/05), 916 So.2d 143, 916 So.2d 143.
In addition, the defendant was resen-tenced on remand. We have reviewed the record for errors patent. LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We find the following error.
This Court vacated the sentence on Count 1 and remanded for resentencing so the trial court could order at least five years of the sentence to be served without benefit of parole, probation, or suspension of sentence in accordance with LSA-R.S. 40:966 B(1). State v. Howard, 09-928 at 13, 37 So.3d at 1107. On remand, the trial judge sentenced defendant to imprisonment at hard labor for fifteen years, with the first five years to be served without benefit of parole, probation, or suspension of sentence, as this Court ordered.
However, at the time of the offense on August 3, 2007, LSA-R.S. 40:966 B(1) provided that at least five years of the sentence were to be served without benefit of probation or suspension of sentence. LSA-R.S. 40:966 B(1) did not restrict parole eligibility. Accordingly we amend the defendant’s sentence on Count 1 to delete the restriction on parole eligibility. We also order the trial court to correct the commitment accordingly, and to transmit the amended commitment to the officer in charge of the institution to which defendant has been sentenced. See State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam); State v. Watts, 98-2594 (La.1/29/99), 736 So.2d 821; State v. Uloho, 04-55, p. 25 (La.App. 5 Cir. 5/26/04), 875 So.2d 918, 934, writs denied, 04-1640 (La.11/19/04), 888 So.2d 192 and 08-2370 (La.1/30/09), 999 So.2d 753.
We also find that there are inconsistencies between the commitment and the transcript, in that the commitment reflects that defendant was convicted of ^“SCHEDULE 1 DIST/WITD OF A CDS — HEROIN;” however, defendant was actually convicted on Count 1 of possession with intent to distribute heroin.
Because the commitment appears to indicate distribution as the charge, we remand the matter to allow the trial judge to correct the commitment to conform to the transcript and other parts of the record. State v. Woolridge, 08-340, p. 9 (La.App. 5 Cir. 10/14/08), 996 So.2d 618, 623-24, writ denied, 09-179 (La.10/30/09), 21 So.3d 281.
Second, the commitment reflects that the trial judge ordered the sentence on Count 1 “to run concurrently with count 2 and any other Sentence the Defendant is serving from this date forward.” However, the transcript does not show that the trial judge ordered the sentence on Count 1 to be served concurrently with any other sentence. The transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).
Lastly, the commitment states that defense counsel “objected to the Court’s findings and advised he will file a Motion for Appeal;” however, the transcript only shows that defense counsel objected to the ruling. It does not reflect that defense counsel advised that he would file a motion for appeal. The transcript prevails. State v. Lynch, supra.
For the above discussed reasons, defendant’s convictions affirmed. Defendant’s sentence on count 1 is amended to delete the provision excluding parole eligibility, *1170 and as such, his sentences are affirmed. This matter is remanded to the trial court with instructions to correct the commitment to conform to the transcript in the above respects, to correct the commitment to reflect that the sentence on Count 1 has been amended to delete the restriction on parole eligibility, and to transmit the amended commitment to the officer in charge of the | ^institution to which defendant has been sentenced. See State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam).

AMENDED AND AFFIRMED; REMANDED WITH ORDER.

. The underlying facts supporting defendant’s convictions can be found in this court’s prior opinion. State v. Howard, supra.

. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).