Judgment rendered November 17, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,696-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Appellee

Versus

TRENTON BAYLES                        Appellant

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 17CR28776

Honorable Amy Burford McCartney, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Chad M. Ikerd

JEFFREY M. LANDRY                    Counsel for Appellee
Louisiana Attorney General

JOHN TAYLOR GRAY
MICHELLE ANDERSON THOMPSON
Assistant Attorneys General

* * * * *

Before PITMAN, GARRETT, and STEPHENS, JJ.

**STEPHENS, J.**

Early in 2017, Gary Evans, the District Attorney of the 42nd Judicial District, had instituted a ticket "Diversion Program" for most traffic offenses. This resulted in the diversion of funds previously collected in the form of fines and court costs that were deposited into the 42nd Judicial District's criminal court fund and used to fund, *inter alia*, the local public defender's office. On June 29, 2017, Judges Amy Burford McCartney and Charles Adams issued an *ex parte* order captioned "IN RE: CRIMINAL COURT FUND." This order provides in part:

> Considering the actions of the District Attorney, Gary Evans, implementing a Diversion Program for many, if not all traffic offenses issued in the 42nd Judicial District (including municipal offenses) thereby diverting the fines and court costs from the legislatively mandated public entities, exclusively to the District Attorney's Office; and,
>
> Considering the diversion of those fines and costs from the Criminal Court Fund, which is used to defray the expenses of the criminal court as per La. R.S. 15:571.11, solely to the District Attorney's Office; and,
>
> Considering the Criminal Court Fund will soon be depleted and the 42nd Judicial District Court will be unable to pay the costs of: transcribing testimony, preparing records in appeals, petit juries and grand juries, witness fees, the parish law library, and expenses related to the judges; that,
>
> Pursuant to the La. Atty Gen. Op. No. 85-902, 1985, effective immediately, the Judges of the 42nd Judicial District can no longer approve or authorize the expenditure of funds from the Criminal Court Fund to pay for the costs of operating the District Attorney's Office.

On March 19, 2018, the D.A. and the Public Defender's Office entered into a contract entitled "Cooperative Endeavor Agreement" ("CEA") wherein the D.A. agreed to pay to the Public Defender's Office $45 of the fee received from each ticket (except seatbelt tickets) made a part of his diversion program. In exchange, the Public Defender's Office obligated

itself to maintain an adequate level of attorney and support staff that is competent, professional, diverse, and to make reasonable efforts to employ African-American attorneys to assist in the defense of DeSoto Parish criminal defendants. On March 29, 2018, Judge Adams *sua sponte* issued an order to the District Attorney and Public Defender to appear and show cause why the 42nd Judicial District Public Defender's Office should not be recused in defendant Bayles' case, as well as all other cases, due to a conflict of interest.

On April 2 and 3, 2018, the Public Defender and District Attorney filed separate motions to recuse Judges Adams and McCartney from this case. According to the Public Defender, the judges had a personal interest in and bias toward the matter involving the CEA,[1] and it was the District Attorney's argument that the judges would be unable to conduct a fair and impartial hearing. On April 3, 2018, Judge Adams provided written reasons supporting his decision not to recuse himself. On April 6, 2018, *ad hoc* Judge Jimmie Peters heard the motions to recuse, and, on April 12, 2018, Judge Peters rendered judgment denying both motions. Supervisory review was sought by both the District Attorney and the Public Defender.

This is the criminal matter in which the litigation over the Cooperative Endeavor Agreement between the District Attorney for the 42nd Judicial District and 42nd Judicial District Public Defender's Office arose. *See, In re: Cooperative Endeavor Agreement Between 42nd District Indigent Defender Office and 42nd Judicial District Office of District Attorney*, 52,393 (La.

---

[1] The alleged bias was the judges' objection to the fact that the public defender appointed to represent defendant Bayles was being compensated in part by funds paid by the District Attorney's Office. A second reason was Judge Adams' expressed interest in proposed legislation that provided for disbursement of any diversion funds by the DeSoto Parish Sheriff rather than the District Attorney.

2

App. 2 Cir. 9/7/18), 255 So. 3d 707, *writ granted, judgment vacated sub nom; In re: Cooperative Endeavor Agreement Between 42nd Judicial District District Attorney's Office and 42nd Judicial District Public Defender's Office*, 2018-1644 (La. 4/15/19), 267 So. 3d 581.

Unfortunately for this defendant (and we assume there are others, although none as "lucky" as Mr. Bayles), as a result of his last name beginning with the letters "Ba", he was first up on the docket and therefore the case in which the issue of the CEA first caused conflict of counsel concerns in the 42nd Judicial District. The travesty of the matter, however, is that defendant's criminal case was sidelined as it appears that the wheels of justice in DeSoto Parish rolled quite a bit slower, and in defendant's case, came to almost a complete halt, as the CEA litigation made its way through the court system.

Be that as it may, the instant appeal, which arises out of the 42nd Judicial District Court, DeSoto Parish, Louisiana, the Honorable Amy Burford McCartney presiding, was filed by defendant, Trenton Bayles, who was convicted by a six-person jury of possession of methamphetamine, a Schedule II controlled dangerous substance, a violation of La. R.S. 40:967(C)(2), and sentenced by the trial judge to five years at hard labor. Defendant has appealed, urging ineffective assistance of counsel and excessiveness of sentence. Because of the unique facts and circumstances of this case, for the reasons set forth below, we remand the matter to the trial court for a contradictory hearing on defendant's claims of ineffective assistance of counsel.

## FACTS/PROCEDURAL BACKGROUND

At approximately 1:00 a.m. on July 20, 2017, defendant and his girlfriend were sitting in her car, which they had just parked in the back lot of the Relay Station in Frierson, Louisiana. Sergeant Dakota Gingles with the DeSoto Parish Sheriff's Office approached the car, which he had deemed suspicious since it was an occupied automobile in the lot specifically designated for use by 18-wheelers or tractor trailers. Sergeant Gingles described the vehicle's location as "the very back corner [of the lot], ducked off in the dark … into that spot hidden behind [a] tractor trailer." As he turned the spotlight toward the vehicle, Sgt. Gingles observed "a frantic kind of moving" by the occupants of the car. Defendant got out of the vehicle when told to do so by Sgt. Gingles. A baggie fell out, and defendant was secured and placed in the back of the patrol vehicle. Sgt. Gingles' partner secured defendant's girlfriend, and a search of the vehicle led to the discovery of a small amount of what was suspected to be methamphetamine and a clear glass pipe. Defendant was arrested and subsequently charged by bill of information (Case No. 17-CR-28776) with possession of schedule II CDS, a violation of La. R.S. 40:967(C)(2), on August 22, 2017.

Defendant, represented by court-appointed counsel, Angela Waltman, an attorney with the 42nd Judicial District Public Defender's Office, was arraigned before Judge Amy Burford McCartney in Division A on September 17, 2017. Attorney Waltman entered a plea of not guilty on behalf of her client and waived formal reading of the bill of information. Judge McCartney set a pretrial conference for February 12, 2018, and trial on the merits was set for March 12, 2018.

4

On November 9, 2017, defendant, represented by Attorney Waltman, appeared before Judge McCartney. Attorney Waltman made an oral motion to transfer the instant charges to Judge Adams in Division B, where charges for possession of a firearm by a convicted felon (Case No. 17-CR-28869), were pending. On January 18, 2018, defendant appeared with Attorney Broocks Greer[2] of the public defender's office, and trial was reset for April 16, 2018.

At a hearing on April 16, 2018, defendant, still represented by Attorney Greer, engaged in the following colloquy with Judge Adams.

> THE COURT: All right, Mr. Bayles, Mr. Greer has presented you with a copy of a judgment that appears to address maybe the custody of a child of yours, is that right?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is J. B. your son?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay.
>
> THE DEFENDANT: This looks like the same document that he took my kids away from me like ten years ago or something like that.
>
> THE COURT: He being who?
>
> THE DEFENDANT: Mr. Evans.
>
> THE COURT: Has he take any actions lately?
>
> THE DEFENDANT: I had a court date come up. They sent me a notice when I was in here where their mom was trying to get custody.
>
> THE COURT: And who is J. B.'s mother?
>
> THE DEFENDANT: T. L.

---

[2] The record does not reflect the reason for the change in defendant's representation; both Attorneys Waltman and Greer were public defenders.

5

THE COURT:     And you and her are no longer together?

THE DEFENDANT:     No, sir.

THE COURT:     Have ya'll had litigation about who has custody of J. B.?

THE DEFENDANT:     Well I think Judge Burgess switched the custody a long time ago.  Like my mom and my kids' grandma on their mom's side would switch up every Friday….

THE COURT:     Let me ask you this question then.  Do you feel like Mr. Evans has had some involvement in that custody?

THE DEFENDANT:     Oh yeah, yes sir.

THE COURT:     Okay.  And now he is the District Attorney.

THE DEFENDANT:     Yes, sir.

THE COURT:     And does that concern you of his making decisions about how you're prosecuted?

THE DEFENDANT:     It does.  I wrote [Attorney Waltman] when I first got here Ms. Waltman was my lawyer.  I wrote her a letter and told her about, you know, I felt it was conflicted but she wasn't my lawyer very long, and I don't know what happened.

THE COURT:     *And you understand Mr. Greer has a potential conflict pending right now?*

THE DEENDANT:     Yes, sir.

THE COURT:     So my intention would be to appoint a private attorney outside of the Public Defender's Office to represent you….*And the attorney can address the potential for conflict involving the District Attorney's Office….*

On April 16, 2018, Judge Adams issued an order providing in part that, "[I]n light of the pending conflict of interests question between the District Attorney and the Public Defender… IT IS ORDERED THAT [private attorney] Christopher Hatch be appointed to represent Mr. Bayles."

On April 26, 2018, Judge Adams issued an order setting his March 29, 2018, rule to show cause for a hearing on May 3, 2018.  Also on April 26,

6

2018, this Court, in 52,282-KW, denied the District Attorney's writ seeking reversal of the motion to recuse the judges of the 42nd Judicial District Court. On May 2, 2018, the District Attorney filed a motion to quash Judge Adams' March 29, 2018, rule to show cause, and an opposition to the rule to show cause was filed by the Public Defender. Also on May 2, 2018, this Court, in 52,301-KW, denied the Public Defender's writ as to the recusal of Judge McCartney, but granted the writ as to Judge Adams, reversing and vacating Judge Peters' denial of the motion to recuse and remanding the matter.[3]

Filed into the record on May 11, 2018, was a "letter" written by defendant to the DeSoto Parish Clerk of Court Jeremy Evans in which defendant alleged in pertinent part, ***"I am currently 'Without An Attorney' until certain 'Conflict of Interest' Issues are Resolved."***[4]

On May 29, 2018, Judge McCartney *sua sponte* issued an order opening a new criminal proceeding, criminal docket No. 18-CR-29385, with the caption of "Cooperative Endeavor Agreement Between the 42nd Judicial District District Attorney's Office and the 42nd Judicial District Public Defender's Office" for litigating the issues regarding the CEA, as well as Judge Adams' March 29, 2018, order and rule to show cause. It is as of this date that the CEA dispute was separated from defendant Bayles' criminal case. This is *In re: Cooperative Endeavor Agreement Between 42nd Judicial*

---

[3] On May 4, 2018, following a request for rehearing and clarification filed by Judge Adams, this Court ruled that, "Judge Charles Adams is recused from any and all proceedings concerning the Rule to Show Cause pending on the Cooperative Endeavor Agreement and all future proceedings involving said agreement, in order to avoid even the appearance of impropriety."

[4] The "conflict of interest" issues to which defendant is referring are not only the perceived conflict that caused his appointed counsel to withdraw—the Cooperative Endeavor Agreement—but the personal allegations defendant made against the District Attorney that the judge assured him, on the record, would be investigated by ***defendant's attorney***.

7

*District Attorney's Office and 42ⁿᵈ Judicial District Public Defender's*

*Office*, *supra*.[5]

A hearing was held on May 30, 2018. Judge Adams notified

defendant that his newly appointed attorney, Christopher Hatch, was no

longer able to serve as defendant's counsel due to a conflict of interest. The

following is excerpted from the hearing.

> THE COURT: …The Court has been notified by Mr. Hatch that the District Attorney's Office is intending to recuse themselves in the case. I sent a letter to the District Attorney's Office May 21ˢᵗ to Mr. Evans requesting that if Mr. Evans was intending to recuse himself from the Bayles prosecution that it was imperative that he do so timely so the Public Defender's Office can resume its representation of Mr. Bayles. I have received no response from Mr. Evans as to that hand-delivered letter. So now, Mr. Clark?

---

[5] Judge McCartney set the matter for hearing on May 31 2018, and following the hearing, she took the matter under advisement. On June 4, 2018, Judge McCartney issued a judgment declaring that the CEA was "unconstitutional, unlawful, against public policy, and without legal effect." Separate written reasons were filed the same day. This judgment was appealed by both the District Attorney and Public Defender. The District Attorney filed a motion to dismiss the appeal on the grounds that the issue raised in the appeal was moot because the CEA had been dissolved by the District Attorney on September 4, 2018. The motion to dismiss was denied, and Judge McCartney's judgment was affirmed by this Court. *In re: Cooperative Endeavor Agreement Between 42ⁿᵈ District Indigent Defender Office and 42ⁿᵈ Judicial District Office of District Attorney*, 52,393 (La. App. 2 Cir. 9/7/18), 255 So. 3d 707.

The District Attorney and Public Defender took writs to the Louisiana Supreme Court, and, in a *per curiam* decision, pretermitting a determination of the merits, the supreme court found that the district court erred in rendering judgment in this matter because there was no justiciable controversy before the court. *In re: Cooperative Endeavor Agreement Between 42ⁿᵈ Judicial District Attorney's Office and 42ⁿᵈ Judicial District Public Defender's Office*, 2018-1644 (La. 4/15/19), 267 So. 3d 581. In vacating and setting aside this Court's judgment which affirmed the trial court's judgment, the supreme court stated:

> In the instant matter, relators did not file any action for declaratory relief to determine the validity or constitutionality of the agreement. There was no criminal proceeding before the court and no criminal defendant raised any Sixth Amendment issues arising from the agreement. Rather, the district court, acting *sua sponte*, ordered the parties into court, created a proceeding on the docket, and issued an order that the clerk create a record. In the absence of any factual or substantial dispute between real parties, we find there was no justiciable controversy presented to the court.

*Id.* at 583.

A.D.A. CLARK:   Your Honor, I have spoken with Mr. Evans…. [H]e says that he is not recusing himself from the matter.

THE COURT:     All right.  So, Mr. Bayles, do you personally know of any reason why Mr. Evans would have a conflict in prosecuting you?

THE DEFENDANT:      Yes, sir.  Over two years ago [Mr. Evans] and… he was my fiancee's—… I got two kids by the Lagars lady [T. L.] and he was her attorney.  I don't know, they ended up—they was living together.  Like my kids would live with Mr. Evans.  They would stay with Mr. Evans.  Like they go on trip all the time and stuff.  Every time my little girl calls me it shows up as Gary Evans' phone number.  I don't know, I don't know what they got going on.

THE COURT:     Mr. Greer, you want to speak to your client?

(Counsel and the Defendant have a discussion off record)

MR. GREER:     Your Honor, I'm not sure what to say to that.
….

THE COURT:     So, [A.D.A.] Clark, in response to the pro se statement as to grounds for recusal, any comment from the D.A.'s Office?

A.D.A. CLARK:   I have—the first time I'm hearing anything from Mr. Bayles.  If he's gonna proceed with a petition to recuse the D.A., it would need to be in writing.  Should've been filed in accordance with Article 521.  And that would be tried after a contradictory hearing.  At this time, knowing Mr. Bayles' history, I believe he is inaccurate, but that is not for me to determine.

MR. GREER:     Your Honor, Mr. Bayles advised me that the information he just, which I heard for the first time, that he just put before the Court, was contained in some notes that he provided [Attorney] Waltman when she was representing him.

THE DEFENDANT:      It's in my file too.
….

THE COURT:     …Mr. Greer, are you telling the Court that you're unable to pursue Mr. Bayles' claims?...

THE COURT:     Are you able to represent Mr. Bayles?

MR. GREER:      Except for…the joint endeavor agreement. That's the one thing that's standing between me and Mr. Bayles is the perceived conflict that's raised by that.

THE COURT:      In light of [the perceived conflict], Mr. Greer, you did not interject any position or argument on behalf of Mr. Bayles when he made his statement, pro se statement.

MR. GREER:      That's correct.

THE COURT:      Are you constrained to not make a statement or are you able to represent Mr. Bayles?

MR. GREER:      As of now I don't think I'm able to represent Mr. Bayles.

THE COURT:      All right.  Let the record reflect the Public Defender's Office has declined to represent Mr. Bayles even to pursue a motion to recuse the District Attorney based upon the statements of the client here in open court.  I was under the mistaken impression that the Public Defender's Office would be able to go forward if we got to the issue of the D.A.'s recusal.  I'm obviously misguided in that matter.  But nonetheless, I believe that issue, based upon your statements here today, remains to be seen whether or not the District Attorney's Office remains in the position of prosecution.

MR. GREER:      And, Your Honor, if I may, I did not realize I was misleading the Court.  I did not know of the grounds for recusal.

THE COURT:      And, Mr. Greer, I just heard them myself, okay?

MR. GREER:      Yeah, I understand that.

THE COURT:      So now having heard that, as ostensibly Mr. Bayles' Attorney, what would be the appropriate thing for a defense attorney to do?

MR. GREER:      ***Pursue that—the appropriate thing would be to pursue that and see if there's any basis for the recusal, but right now the District Attorney is not recused.***

After the Public Defender's Office recused itself from his case again, defendant Bayles was unrepresented.  Judge Adams rendered an order with this language:

Following May 30, 2018, court appearance *whereby the District Attorney's Office indicated they were not recusing themselves from the above mentioned case and considering the Defendant's potential grounds for recusal*;[6]

IT IS ORDERED that Marty Stroud, Attorney at Law, be and is hereby appointed to represent Trenton Bayles.

On August 22, 2018, an order was issued releasing defendant to the custody of the director of a substance abuse rehabilitation facility in nearby Sabine Parish. Several motions to continue were filed by Attorney Stroud on defendant's behalf; the record contains evidence that as late as April 2019, defendant was still receiving inpatient treatment at the Sabine Parish rehab facility.

Attorney Stroud filed a motion to withdraw as defendant's counsel on May 10, 2019, in light of the Louisiana Supreme Court's opinion in the CEA case. Judge Adams granted Attorney Stroud's motion to withdraw on May 16, 2019, and reappointed the Public Defender's Office; Attorney Greer was reassigned as defendant's attorney.

On October 14, 2019, the parties appeared for defendant's trial before Judge Adams. Based upon his reassignment to defendant's case after the pretrial conference, and the fact that he had another case set for trial before defendant's, Attorney Greer requested a continuance. The state objected, and Judge Adams denied defense counsel's request. After discussing with defense counsel this Court's previous recusal order, on October 16, 2019, Judge Adams transferred defendant's case to Division A. Judge McCartney

---

[6] Defendant is given further reassurance from the Court that his allegations of personal interest on the part of the District Attorney will be investigated.

began by having the minute clerk seat the first panel of prospective jurors, and defense counsel did not re-urge his motion for a continuance.

After the first witness for the state testified, the prosecutor asked for a recess to set up video equipment for his second witness. While the jury was out of the courtroom, Judge McCartney noted that she was catching up on the case, having recently been assigned to it, and asked the attorneys whether the issue of the District Attorney's potential recusal, brought up in the May 30, 2018, hearing, had been addressed and resolved. Attorney Greer thought it had been addressed and "supposedly" resolved. The prosecutor pointed out that since there had never been a written motion filed to recuse the District Attorney, "[t]here was nothing ever resolved." The following remarks were also made:

> A.D.A. HOLLAND: I vaguely recall that there was some issue where OCS perhaps had some involvement … and you know the District Attorney represents OCS. And there was never anything that came from it because there's no conflict, so there's nothing filed. There's no need for the Court to rule on it because there's no request for recusation.

> MR. GREER: I suppose that's what happened. Is they studied it and didn't file a motion and it went away.

> THE COURT: Okay. But you looked at it and didn't file a motion.

> MR. GREER: Right.

Trial resumed and following closing arguments, a unanimous six-person jury found defendant guilty as charged. The District Attorney filed a bill charging defendant as a habitual offender on November 11, 2019.

On December 18, 2019, defendant sent a letter/appeal to the DeSoto Parish Clerk of Court. In this correspondence, defendant asserted:

12

> Dear Clerk of Court
>
> I was recently found Guilty of Possession of Schedule II and I would like to Appeal that Conviction. I thought my Lawyer Would Appeal but I Haven't Heard From Him since the Trial, So I Would Like to File Appeal "Pro Se."
>
> I Filed For a Speedy Trial about 2 Years ago and didn't even get a hearing on the Matter. My Trial Didn't Commence Until Roughly 2 years Later. Within that 2 year period, I Had No Council [sic] as a result of a conflict of interest Because the District Attorney Was Paying My Attorney.
>
> The "Cooperative Endeavor Agreement" Was Filed in My Name (because I was First on the Docket) by Honorable Judge Adams and it Left Me in "Limbo" until an Appealed Ruling Come back From a Higher Court, Leaving Me Without council [sic] and Neglecting My Right to Due Process and a Speedy Trial.
>
> I also Filed For a preliminary examination/Hearing (Pro Se) About 2 years ago and it was neglected as well and I Feel Like all the above is unconstitutional and I didn't Receive a Fair Trial!
>
> Also, When I did Have an Attorney (before the conflict) He Withdrew a filed Motion to Suppress evidence because the prosecutor Requested that He do so and I believe I Had to Re-File that Motion, Myself as a result of inadequate council [sic].
>
> PS It Wasn't My Drugs
> …

Apparently prompted by the "appeal" sent by defendant to the clerk of court, on January 9, 2020, the morning set for defendant's sentencing hearing, the District Attorney, represented by A.D.A. George Winston III, filed a motion to recuse the District Attorney's Office from all pending prosecutions of defendant, which included the instant matter, 17-CR-28776, as well as the pending charges in 17-CR-28869 and 18-CR-29514, and the habitual offender bill filed by the State. According to the motion:

> Since Trenton Bayles' name was indeed used in litigation involving the District Attorney, Mr. Bayles has now, with the attached filing, alleged the litigation prevented him legal representation. The District Attorney has at no time paid for

any defense attorney or any case involving Trenton Bayles, and all civil litigation in which his name was used has now concluded. Because of Mr. Bayles' allegations, the District Attorney moves that he be recused from pending prosecutions of Trenton Bayles.

This motion was granted by Judge McCartney, who was caught totally off-guard by the filing, particularly its timing, as she expressed to both attorneys at a bench conference. Judge McCartney explained the situation to defendant, that the District Attorney's Office had just filed motions to recuse in all of his matters, she would be appointing the Attorney General to act in place of the District Attorney, and his sentencing in the instant case would be continued to February 13, 2020. Defendant told Judge McCartney he would rather file his own motion to recuse the District Attorney, since "He should have recused himself like two years ago…." The judge noted that the D.A. was recused now, and there was no need for her to grant two motions. However, defendant was reassured that his objection was "on the record."

Defendant's sentencing hearing was held on February 13, 2020. In the month between defendant's conviction and sentencing, defense counsel did not file a motion for new trial, noting that this was a "considered decision." Defendant was sentenced to five years at hard labor, the maximum sentence allowed under the statute of conviction at the time of his offense, July 20, 2017.[7] Attorney Greer did not object to defendant's sentence, and no motion to reconsider sentence was filed. Attorney Greer indicated that an appeal would be filed. Judge McCartney brought up the issue of the habitual offender bill of information. The assistant attorney general stated that, based on defendant's criminal history, he would be

_____

[7] The maximum sentence for the offense of conviction was reduced to two years by Acts 2017, No. 281, §2, effective August 1, 2017.

14

facing a mandatory life sentence. However, the state was offering a plea agreement to withdraw the habitual offender bill if defendant would plead guilty to the other charges pending against him in DeSoto Parish: possession of a firearm by a felon (17-CR-28869) and unauthorized use of a motor vehicle (28-CR-29614), with respective sentences of ten and two years imprisonment, to run concurrently with the five-year sentence for the methamphetamine possession conviction.

Defendant has appealed, urging ineffective assistance of counsel and excessiveness of sentence.

## DISCUSSION

### *Assistance of Counsel*

Defendant urges that he received ineffective assistance from his appointed trial counsel, a local public defender. First, Attorney Greer failed to file a motion for new trial when the District Attorney's Office recused itself from the case after trial but before sentencing. Defendant points out that this recusal was based on reasons known by all parties before trial and is not something that became apparent only after trial. By the District Attorney's own admission, his office prosecuted the case when it should have been recused from doing so. According to defendant, Attorney Greer's "considered decision" not to file a motion for new trial after the District Attorney's recusal post-trial and prior to sentencing constitutes ineffective assistance of counsel.

Next, Attorney Greer failed to recuse himself from this case when it was clear that he, like the District Attorney's Office, was conflicted as a result of the Cooperative Endeavor Agreement that allowed the District Attorney's Office to fund the local Public Defender's Office. Defendant

15

urges that the cooperative agreement was both constitutionally impermissible and a compromise to the independence of the representation provided by the Public Defender's Office to criminal defendants prosecuted by the District Attorney's Office. More specifically, appellate counsel points out that defendant complained that his attorney was being paid for by the D.A.'s Office and that this caused a conflict in letters defendant sent to the DeSoto Parish Clerk of Court. Appellate counsel also notes that defendant never waived his right to conflict-free counsel on the record.

On the other hand, the State, represented by the Attorney General's Office, urges this Court to deny defendant's ineffective assistance claims since they are more appropriately raised in an application for post-conviction relief. The State further points out that the record is insufficient to address defendant's claims.

Should this Court consider defendant's claims, the State urges that: the District Attorney's motion to recuse was filed in response to defendant's allegations in the letter to the clerk of court that the District Attorney was paying defense counsel; both the District Attorney and the Public Defender consistently denied that the CEA created a conflict of interest; and, in the District Attorney's motion to recuse, he reiterated his position that he "at no time paid for any defense attorney or any case involving Trenton Bayles."

As for defendant's second assignment of error, the State argues that Attorney Greer had no obligation to recuse himself because there was no conflict. According to the State, the District Attorney recused himself *voluntarily*, not because of a conflict or obligation to do so. Instead, the District Attorney recused himself after defendant's letter to the clerk of court in which defendant expressed *his* opinion that the District Attorney was

16

paying defendant's attorney. The fact that the District Attorney recused himself is not *per se* evidence of an actual conflict, nor is it evidence that a recusal of defendant's attorney was required.

According to the State, because defendant failed to object at trial to his attorney's conflict of interest, he must establish that there was an actual conflict of interest that adversely affected his attorney's performance. Because defendant's allegations about the District Attorney paying his trial attorney are false, defendant cannot offer evidence to prove them. The State notes that trial counsel "managed to broker a plea arrangement for the Defendant that resulted in relatively minimal jail time considering his multiple charges and criminal history, and resulted in the State dismissing the mandatory life-multiple offender bill."

*Applicable Legal Principles*

Both the Louisiana and federal constitutions guarantee a criminal defendant's right to the effective assistance of counsel. U.S. Constitution art. VI; La. Constitution art. 1, §13; *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); *State v. Brooks*, 94-2438 (La. 10/16/95), 661 So. 2d 1333; *State v. Turner*, 52,510 (La. App. 2 Cir. 4/10/19), 267 So. 3d 1202, *writ denied*, 2019-00873 (La. 9/24/19), 279 So. 3d 386; *State v. Mansfield*, 50,426 (La. App. 2 Cir. 2/24/16), 190 So. 3d 322.

Under the standard for ineffective assistance of counsel set out in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), adopted by the Louisiana Supreme Court in *State v. Washington*, 491 So. 2d 1337 (La. 1986), a reviewing court must reverse a conviction if the defendant establishes that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and

17

counsel's inadequate performance prejudiced the defendant to the extent that the trial was rendered unfair and the verdict suspect. *State v. Ball*, 2019-01674 (La. 11/24/20), 305 So. 3d 90, *cert. denied*, 537 U.S. 864, 123 S. Ct. 260, 154 L. Ed. 2d 107 (2002); *State v. McGee*, 2018-1052 (La. 2/25/19), 264 So. 3d 445; *State v. Turner, supra*.

Every defendant is entitled to "representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 1103, 67 L. Ed. 23 220 (1981); *State v. Tucker*, 2013-1631 (La. 9/1/15), 181 So. 3d 590, 618, *cert. denied*, 578 U.S. 1018, 136 S. Ct. 1801, 195 L. Ed. 2d 774 (2016). As a general rule, Louisiana courts have held that an attorney laboring under an actual conflict of interest cannot render effective legal assistance to the defendant whom he is representing. *State v. Reeves*, 2006-2419 (La. 5/5/09), 11 So. 3d 1031, *cert. denied*, 558 U.S. 1031, 130 S. Ct. 637, 175 L. Ed. 2d 490 (2009); *State v.* Cisco, 2001-2732 (La. 12/3/03), 861 So. 2d 118, *cert. denied*, 541 U.S. 1005, 124 S. Ct. 2023, 158 L. Ed. 2d 522 (2004); *State v. Tensley*, 41,726 (La. App. 2 Cir. 4/4/07), 955 So. 2d 227, *writ denied*, 2007-1185 (La. 12/7/07), 969 So. 2d 629. An actual conflict exists only when "the attorney's and defendant's interest diverge with respect to a material factual or legal issue or to a course of action." *State v. Tucker*, 181 So. 3d at 620, quoting *United States v. Moree*, 220 F. 3d 65, 69 (2d Cir. 2000) (citation and internal quotations omitted).

As noted by the Louisiana Supreme Court in *State v. Tucker*, 181 So. 3d 590, 619-20:

> Although a defendant generally is required to demonstrate prejudice to prevail on a claim of ineffective assistance of counsel*, Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984), prejudice is presumed when counsel is burdened by an actual conflict of interest. *Id.*

at 692, 104 S. Ct. at 2067; *United States v. Iorizzo*, 786 F.2d 52, 58 (2d Cir. 1986). This presumption is "fairly rigid." *Strickland*, 466 U.S. at 692, 104 S. Ct. at 2067. Moreover, "once the defendant establishes that there was an actual conflict, he need not prove prejudice, but simply that a 'lapse in representation' resulted from the conflict." *Iorizzo*, 786 F.2d at 58 (quoting *Cuyler*, 446 U.S. at 349, 100 S. Ct. at 1718). To prove a lapse in representation, a defendant must "demonstrate that some 'plausible alternative defense strategy or tactic might have been pursued,' and that the 'alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" *United States v. Levy*, 25 F.3d 146, 157 (2d Cir. 1994) (quoting *Winkler*, 7 F.3d at 309).

If the issue of counsel's alleged conflict of interest is raised in a pretrial setting, the district court has two options: "appoint separate counsel or take adequate steps to ascertain whether the risk of a conflict of interest is too remote… Failure to do one or the other in a case in which an actual conflict exists requires reversal." *State v. Reeves*, 11 So. 3d at 1083; *State v. Cisco*, 861 So. 2d at 130; *State v. Scott*, 2016-479 (La. App. 3 Cir. 12/28/16), 209 So. 3d 888, 890. If the issue of counsel's alleged conflict of interest is not raised until after trial, "the defendant must prove that an actual conflict of interest adversely affected his lawyer's performance." *State v. Reeves, supra,* citing *State v. Kahey*, 436 So. 2d 475, 484 (La. 1983); *State v. Scott, supra*.

Generally, a claim of ineffective assistance of counsel is properly raised in an application for post-conviction relief in the trial court. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art 930. *State v. Ball; State v. McGee, supra; State v. Mansfield, supra.* When the record is sufficient, the claim may be resolved on direct appeal in the interest of judicial economy. *State v. McGee, supra; State v. Bell*, 51,312 (La. App. 2 Cir. 5/17/17), 222 So. 3d 79; *State v. Smith*, 49,356

19

(La. App. 2 Cir. 11/19/14), 152 So. 3d 218, *writ denied*, 2014-2695 (La. 10/23/15), 179 So. 3d 597. Finally, in extraordinary circumstances, appellate courts have taken a third approach on appeal and remanded an ineffective assistance claim to the trial court for an evidentiary hearing. *State v. Mansfield, supra. See also State v. Howard*, 2009-928 (La. App. 5 Cir. 5/25/10), 37 So. 3d 1099, *aff'd as amended*, 2010-869 (La. App. 5 Cir. 5/24/11), 66 So. 3d 1160, *writ denied*, 2011-1468 (La. 4/9/12), 85 So. 3d 135; *State v. Lee*, 2000-0183 (La. App. 1 Cir. 2/16/01), 788 So. 2d 452, *writ denied*, 2000-1611 (La. 3/30/01), 788 So. 2d 442.

This defendant has suffered through inordinate delays, none of which were his fault, in this case. He has had four court-appointed attorneys, and more than once during this debacle, defendant was unrepresented and unable to consult with an attorney at all. Defendant felt so unheard he reached out not once but twice to the DeSoto Parish Clerk of Court to express not only his concerns about conflict of interest issues, but regarding pending motions and delays in his case that were not attributable to him. As noted by Justice Stevens in *U. S. v. Cronic*, 466 U.S. 648, 653-54, 104 S. Ct. 2039, 2043-44, 80 L. Ed. 2d 657 (1984):

> An accused's right to be represented by counsel is a fundamental component of our criminal justice system. Lawyers in criminal cases "are necessities, not luxuries." Their presence is essential because they are the means through which the other rights of the person on trial are secured. Without counsel, the right to a trial itself would be "of little avail," as this Court has recognized repeatedly. "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have." (footnotes omitted).

While Attorney Greer recognized the potential conflict posed by the CEA in the beginning, it does not appear **on this record** that he even questioned the

possibility of raising such a conflict ***on behalf of his client*** the second time he was appointed to represent defendant.[8]  What concerns this Court the most, however, is the fact that, despite the trial court's reassurances to defendant to the contrary, it appears, ***on this record***, that ***none of defendant's attorneys*** investigated the specific allegations he made against the District Attorney which, if meritorious and proven by defendant, after a contradictory hearing held triggered by a motion to recuse filed by defense counsel, would have mandated the District Attorney's recusal prior to trial.[9]

The CEA did not exist in a vacuum; defendant's case (in particular his ability to present a defense free from issues of actual or potential conflicts) in all likelihood will not be the only one affected by the agreement between the District Attorney and the Public Defender's Office.  Rather than relegate this matter to PCR, we find this case to involve extraordinary circumstances warranting remand to the trial court for an evidentiary hearing on defendant's claims of ineffective assistance of counsel.  *See, State v. Mansfield, supra; State v. Howard, supra; State v. Lee, supra*.  This Court cannot glean from the record answers to any of the issues raised by defendant on appeal, and a full evidentiary hearing[10] in the trial court must

---

[8] The CEA had been dissolved by the time of defendant's trial.  However, that does not negate the potential conflict posed by the agreement and its effects on the representation (or lack thereof) of criminal defendants such as defendant Bayles who were affected by it.

[9] It may very well be that such an investigation was conducted and defendant's claims were unfounded or such that they didn't warrant a motion to recuse the District Attorney.  Nonetheless, because defendant's claims first arose ***before trial***, and the trial judge reassured him that his attorney would handle this issue for him, the record should contain some indication of ***defendant's*** consent to or acquiescence in what appears to this Court to be an utter failure to follow through on the issue.

[10] Any such hearing may involve testimony from some or all of defendant's appointed attorneys and the District Attorney.

be held to address all of defendant's ineffective assistance of counsel claims.[11]

### *Excessiveness of Sentence*

In his final assignment of error, defendant urges that the sentence imposed by the trial judge, five years, which was the maximum sentence for the offense of conviction, is excessive by constitutional standards under the circumstances of this case. However, defendant also argues that Attorney Greer was ineffective in failing to object to the sentence or file a motion to reconsider sentence, which served as a waiver of defendant's rights to appeal this maximum sentence. Because part of defendant's argument on this issue is related to and intertwined with his other ineffective assistance of counsel claims, which require remand for a contradictory evidentiary hearing, we pretermit *at this time* addressing this assignment of error, as it may be rendered moot.[12]

## CONCLUSION

For the reasons set forth above, the matter is remanded to the trial court for a contradictory hearing to fully litigate the ineffective assistance claims raised by the defendant, Trenton Bayles.

### **REMANDED FOR CONTRADICTORY HEARING.**

---

[11] At this evidentiary hearing, *inter alia*, there in fact may be testimony that one or more of the complained-of actions/tactics played a part in the defense strategy and the defendant himself was aware of and approved or acquiesced in it. *See, State v. Howard*, 37 So. 3d at 1107.

[12] The elephant in the room in this appeal is the alleged plea bargain that Attorney Greer, on behalf of defendant, apparently reached with the Assistant Atty. General assigned to this case. Apparently the State and defendant were able to reach an agreement that peripherally involved the instant case, and completely resolved the other charges defendant had pending in DeSoto Parish as well as the habitual offender bill filed by the D.A. *If* the terms agreed to were as set forth previously in this opinion, the plea was a very favorable one for defendant (a ten-year sentence on one charge, a two-year sentence on the other, to be served concurrently with the five-year sentence on the instant offense, with dismissal of the habitual offender bill, which eliminated the imposition of a mandatory life sentence for defendant).

22